UNITED STATES v. RAMSEY.

(Circuit Court of Appeals, Eighth Circuit. May 27, 1912.)

No. 3,606.

1. CARRIERS (§ 4*)—"COMMON CARRIER."

A "common carrier" is one who, by virtue of his business or calling, undertakes for compensation to transport personal property from one place to another, either by land or water, and deliver the same, for all such as may choose to employ him; and every one who undertakes to carry and deliver for compensation the goods of all persons indifferently is, as to liability, to be deemed a "common carrier."

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1, 462–478; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 2, pp. 1313–1319; vol. 8, p. 7607.]

2. CARRIERS (§ 4*)—RECEIVER AS COMMON CARRIER—HOURS OF LABOR LAW.

Hours of Labor Law (Act March 4, 1907, c. 2939, 34 Stat. 1416 [U. S. Comp. St. Supp. 1911, p. 1321]) § 2, makes it unlawful for any common carrier to require or permit any employé subject to the act to be or remain on duty within a longer period than 16 consecutive hours, and whenever any such employé shall have been continuously on duty for 16 hours he shall be relieved, and not required or permitted to go on duty until he has at least 10 consecutive hours off duty, etc. Section 3 declares that any such common carrier, requiring or permitting any employé to go, be, or remain on duty in violation of section 2, shall be liable to a fine not to exceed $500 for each and every violation. Held, that a receiver of an interstate railroad, operating the same under a federal court decree, is a common carrier within such act, though he is not personally liable, and the payment of any judgment obtained for violating the statute is subject to the order of the court appointing the receiver in the exercise of its equitable powers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1, 462–478; Dec. Dig. § 4.*]

In Error to the District Court of the United States for the Eastern District of Oklahoma.

Action by the United States against Asa E. Ramsey, as receiver of the Oklahoma Central Railway Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

John B. Meserve, Asst. U. S. Atty. (William J. Gregg, U. S. Atty., on the brief), for the United States.

Dorset Carter, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WM. H. MUNGER, District Judge. The United States brought an action in the District Court for the Eastern District of Oklahoma against the defendant, as receiver of the Oklahoma Central Railway Company, alleging that the defendant, Asa E. Ramsey, was, in June, 1908, duly appointed by the United States Circuit Court for the Eastern District of Oklahoma receiver for the Oklahoma Central Railway Company, and duly qualified and entered upon his duties as such receiver; that the defendant, as such receiver, was a common carrier, engaged in interstate commerce by railroad in the state of Oklahoma; that in violation of an act of Congress, known as "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon" (34 Stat. at L. 1415), said defendant, beginning, at the hour of 4 o'clock a. m., on April 1, 1910, upon its line of road at and between the stations of Ada, in the state of Oklahoma, and Chickasha in said state, required and permitted its certain conductor and employé, to wit, N. L. Clift, to be and remain on duty as such for a longer period than 16 consecutive hours, to wit, from said hour of 4 o'clock a. m. of the said day to the hour of 10:40 o'clock p. m. on said date, and that said employé, while required and permitted to be and remain on duty as aforesaid, was engaged in and connected with the movement of said defendant's trains, moving between the aforesaid stations, drawn by its own locomotive engines, said train being then and there engaged in the movement of interstate traffic; that by reason of the violation of said act of Congress said defendant is liable to plaintiff in the sum of $500. The petition contained 26 other alleged causes of action of a similar nature and character, and prayed for payment in the sum of $13,500 and costs. To the petition the defendant, as receiver, filed a general demurrer, which was sustained by the court. Plaintiff electing to stand upon said petition, the cause was by the court dismissed, and the United States brings the case here for review, assigning as error the ruling of the court in sustaining said demurrer and dismissing the action.

So much of section 2, of the act of Congress above referred to, as is applicable to this case, reads as follows:

"That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty."

In section 3 it is provided:

"That any such common carrier, or any officer or agent thereof, requiring or permitting any employé to go, be, or remain on duty in violation of the second section hereof, shall be liable to a penalty of not to exceed five hundred dollars for each and every violation, to be recovered in a suit or suits to be brought by the United States district attorney in the District Court of the United States having jurisdiction in the locality where such violation shall have been committed."

[1] A single question is presented to this court, to wit: Are these provisions of the statute applicable, and to be applied, to receivers operating a railway company engaged in interstate commerce? An answer to this involves the question: Is the receiver of a railway company, in the operation of the same, a common carrier?

"A common or public carrier is one who, by virtue of his business or calling, undertakes, for compensation, to transport personal property from one place to another, either by land or water, and deliver the same, for all such as may choose to employ him; and every one who undertakes to carry and deliver, for compensation, the goods of all persons indifferently, is, as to liability, to be deemed a common carrier." Moore on Carriers, p. 18.

In the case of Propeller Niagara v. Cordes, 21 How. 7–22 (16 L. Ed. 41) it is said:

"A common carrier is one who undertakes for hire to transport the goods of those who may choose to employ him from place to place."

In Beers v. Wabash, St. Louis & Pac. R. Co. (C. C.) 34 Fed. 244–247, Gresham, Judge, said:

"Although the property of the Wabash Company is in the custody of the court, it is operated by the receiver as a common carrier, his acts and duties are those of a carrier, and he is bound to afford to all railroad companies, whose lines connect with his, equal facilities for the exchange of traffic."

"It has been repeatedly held that, in the operation and management of railroads by receivers in chancery, they sustain to persons dealing with them the character of common carriers." Alderson on Receivers, § 298.

"Receivers of railroads are also liable in their official capacity to the same extent as the corporations whose road they are operating for damages arising from the negligence of themselves or their servants, or from delay, damage, etc., to freight committed to their care for transportation. In other words, they are accountable as common carriers of goods." Beach on Receivers, § 724.

"The fact that they were acting as receivers under appointment from a court of chancery cannot be recognized as a defense to a suit at law for breach of any obligation or duty voluntarily assumed by them in conducting their business as such receivers, and their assumption of the duties and responsibilities of common carriers is not regarded as incompatible with any duty or responsibility imposed upon them as receivers." High on Receivers (4th Ed.) § 398.

[2] Congress, in passing the act in question, must have intended to use the term "common carrier" in the usual and ordinary acceptation of the term, to wit, as one engaged in the business of carrying persons and property from one place to another, for compensation, for all who should apply to have their goods transported or to be transported in person. The mere fact that the statute in question is a penal one does not require that the words "common carrier" should receive a restricted interpretation. The court, in Johnson v. Southern Pac. Co., 196 U. S. 1–17, 25 Sup. Ct. 158, 161 (49 L. Ed. 363), construing what is commonly known as the "Safety Appliance Act," said:

"The primary object of the act was to promote the public welfare by securing the safety of employés and travelers, and it was in that aspect remedial, while for violations a penalty of $100, recoverable in a civil action, was provided for, and in that aspect it was penal. But the design to give relief was more dominant than to inflict punishment, and the act might well be held to fall within the rule applicable to statutes to prevent fraud upon the rev-

enue and for the collection of customs; that rule not requiring absolute strictness of construction. Taylor v. United States, 3 How. 197 [11 L. Ed. 559]; United States v. Stowell, 133 U. S. 1, 12 [10 Sup. Ct. 244, 33 L. Ed. 555], and cases cited. And see Farmers' & Merchants' National Bank v. Dearing, 91 U. S. 29, 35 [23 L. Ed. 196]; Gray v. Bennett, 3 Metc. (Mass.) 522.

"Moreover, it is settled that, 'though penal laws are to be construed strictly, yet the intention of the Legislature must govern in the construction of penal as well as other statutes; and they are not to be construed so strictly as to defeat the obvious intention of the Legislature.' United States v. Lacher, 134 U. S. 624 [10 Sup. Ct. 625, 33 L. Ed. 1080]. In that case we cited and quoted from United States v. Winn, 3 Summ. 209 [Fed. Cas. No. 16,740], in which Mr. Justice Story, referring to the rule that penal statutes are to be construed strictly, said:

"'I agree to that rule in its true and sober sense; and that is that penal statutes are not to be enlarged by implication, or extended to cases not obviously within their words and purport. But where the words are general, and include various classes of persons, I know of no authority which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, where the mischief to be redressed by the statute is equally applicable to all of them. And where a word is used in a statute, which has various known significations, I know of no rule, that requires the court to adopt one in preference to another, simply because it is more restrained, if the objects of the statute equally apply to the largest and broadest sense of the word. In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the Legislature.'"

Defendants rely chiefly upon the case of United States v. Harris, 177 U. S. 305, 20 Sup. Ct. 609, 44 L. Ed. 780. That case simply held that a receiver of a railroad was not within the letter or spirit of the provisions of the act of March 3, 1873 (Rev. St. §§ 4386–4388 [U. S. Comp. St. 1901, pp. 2995, 2996]), as follows:

"Sec. 4386. No railroad company within the United States whose road forms any part of a line of road over which cattle, sheep, swine, or other animals are conveyed from one state to another, or the owners or masters of steam, sailing, or other vessels carrying or transporting cattle, sheep, swine, or other animals from one state to another, shall confine the same in cars, boats, or vessels of any description, for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water, and feeding, for a period of at least five consecutive hours. * * *

"Sec. 4388. Any company, owner, or custodian of such animals who knowingly and willingly fails to comply with the provisions of the two preceding sections, shall, for every such failure, be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars. * * *"

The court in that case simply decided that a receiver did not come within the designation "any company." The court said:

"It must be admitted that, in order to hold the receivers, they must be regarded as included in the word 'company.' Only by a strained and artificial construction, based chiefly upon a consideration of the mischief which the Legislature sought to remedy, can receivers be brought within the terms of the law. * * * It does not, therefore, follow that the statute in question would be without operation where railroads are in the hands of receivers. The owners and custodians of the stock would still remain subject to the punishment prescribed."

In referring to sections 2 and 3 of the act of Congress of August 13, 1888 (25 Stat. 436, c. 866 [U. S. Comp. St. 1901, p. 582]), the court said:

"It may be conceded that it was the intention of Congress to subject receivers of railroad companies, appointed such by courts of the United States, to the valid laws and regulations of the states and of the United States, whose object is to promote the safety, comfort, and convenience of the traveling public. But we are not now concerned with the general intention of Congress, but with its special intention, manifested in the enactments under which this suit was brought."

The constitutionality of the act under consideration, which we are called upon to construe, was considered in Balt. & Ohio R. R. v. Int. Com. Com'n, 221 U. S. 612–618, 31 Sup. Ct. 621, 625 (55 L. Ed. 878), and in that case it was said:

"This question admits of but one answer. The length of hours of service has direct relation to the efficiency of the human agencies upon which protection to life and property necessarily depends."

The cases of Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262, and Yoakum v. Selph, 83 Tex. 607, 19 S. W. 145, cited by counsel for defendant, do not determine the question now involved. Those cases simply held that a receiver did not come within the statutory designation of "proprietor, owner, charterer or hirer." Those were actions for death resulting from personal injuries, based upon a statute which, so far as applicable, reads as follows:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents."

From a consideration of the foregoing authorities, it seems to us clear that the term "common carrier" had a well-defined meaning, and that the receiver of a railroad came within the designation "common carrier"; that Congress, in using the term "common carrier," used it in the sense in which such words are generally meant and understood; that the object and purpose of the statute would be entirely defeated in all cases in which a railroad or other common carrier is operated by a receiver, if the words "common carrier" should be given a more restricted meaning than generally understood. It seems clear that a receiver, in the operation of a railroad, is a common carrier within the meaning of the statute; and though he is not personally liable, he is liable in his official capacity, and the payment of any judgment obtained would be subject to the order of the court appointing the receiver in the exercise of its equitable powers.

The petition, then, stated a good cause of action. The demurrer was improperly sustained. The judgment is reversed, and the cause is remanded, with directions for further proceedings not inconsistent with the views expressed herein.