RUTHERFORD v. UNION PAC. R. CO.

(District Court, D. Nebraska, Hastings Division. January 11, 1919.)

1. RAILROADS ⊕═207—RECEIVERS—LIABILITY AS CARRIERS.

The receiver of a railroad company is a carrier as to goods and passengers transported.

2. RAILROADS ⊕═5½, New, vol. 7A Key-No. Series—OPERATION UNDER GOVERNMENTAL CONTROL—"CARRIER."

As the Director General is the carrier since the President has taken control and possession of railroads under Act Aug. 29, 1916, § 1 (Comp. St. 1918, § 1974a), Order No. 50 of the Director General providing for his substitution in case of actions against railroad company for causes of action arising since governmental control is warranted notwithstanding Act March 21, 1918, c. 25, § 10 (Comp. St. 1918, § 3115¾j), providing that actions or suits may be brought against such carriers, for the Director General is the carrier, being analogous to a receiver, and it is proper that he be substituted in place of the railroad company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Carrier.]

At Law. Action by Alfred T. Rutherford against the Union Pacific Railroad Company. On motion of the defendant to substitute William G. McAdoo, Director General of Railroads, as the defendant. Motion sustained.

Tibbets, Morey, Fuller & Tibbets, of Hastings, Neb., for plaintiff.

. C. A. Magaw, of Omaha, Neb., and Ragan & Addie, of Hastings, Neb., for defendant.

MUNGER, District Judge. The defendant, the Union Pacific Railroad Company, has presented a motion to substitute William G. McAdoo, Director General of Railroads, as the defendant in this action in the place of the railway corporation. The action is one for damages for personal injuries inflicted on the plaintiff by the defendant while he was being transported as a passenger by the railroad company, and occurring since December 31, 1917, and was begun on October 26, 1918.

[1, 2] The defendant supports its motion by that part of Order No. 50 of the Director General of Railroads, dated October 28, 1918, which reads as follows:

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

The plaintiff claims that by the terms of section 10 of the act of Congress approved March 21, 1918 (Comp. St. 1918, § 3115¾j), "actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law," and therefore he is entitled to bring and maintain his action and to prosecute it to judgment against the railroad company named as defendant, and

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

'that the order of the Director General is not effective, because it is violative of this provision of the statute.

The question involved is the proper meaning of the word "carriers" as used in this statute. Before the enactment of this statute the President by his proclamation of December 26, 1917, had taken possession and control of the railroads of the United States, acting under the authority granted to him by the act of Congress approved August 29, 1916 (39 Stat. 645, c. 418, § 1 [Comp. St. 1918, § 1974a]). The proclamation had directed that this possession, control, and operation should continue to be exercised by William G. McAdoo, as Director General of Railroads, and unless he should otherwise provide by order, that the board of directors, receivers, officers, and employés should continue the operation of the railroads in the names of their respective companies. From and after the taking of possession of the railroads by the President, the corporations or persons who had previously controlled them ceased their functions and obligations as carriers. While goods and passengers continued to be carried, the carriage was conducted by the Director General. The acts of the former officers and employés, who retained their positions and conducted the details of operation, were the acts of the Director General. The part of section 10 of the act of March 21, 1918, on which the plaintiff relies, did not provide that actions at law might be brought by and against the railway corporations, but did provide that they might be brought against "such carriers," and this referred to the "carriers while under federal control" mentioned in the first part of the section. It would have been an anomaly to have given the actual control of the railroads to the Director General, and to have provided that suits arising out of his acts should be brought against the corporations who had been divested of authority over those acts. Moreover, the language which immediately follows that portion of the statute relied on by plaintiff demonstrates that the "carrier" who is subject to suit is the agent of the President who is operating the railroads. The language is:

"And in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government."

The corporations or persons who had lost control and possession of the railroads would have no occasion to assert the defense that they were instrumentalities or agents of the government as to acts which occurred after their control had terminated.

Under these acts of Congress and the proclamation of the President the Director General is a carrier. He conducts the business of receiving and transporting goods and passengers for hire. A receiver of a railway company is a carrier as to the goods and passengers transported, (United States v. Nixon, 235 U. S. 231, 234, 35 Sup. Ct. 49, 59 L. Ed. 207; United States v. Ramsey, 197 Fed. 144, 146, 116 C. C. A. 568, 42 L. R. A. [N. S.] 1031), and the office of the Director General is analogous to that of a receiver of the railway companies.

By the acts of Congress, the President was given authority to exercise the control of the railroads by such agencies as he should deter-

mine. He may appoint one or many persons, or one or many partnerships or corporations to carry out his will and to perform the business of carriage of goods and passengers over the several railroads. The purpose of Congress in the giving the right to bring suits against the carriers was to give the right of suit by or against any of such agencies as should be engaged in the actual control of the operations of the railroad after the President assumed control. The order of the Director General therefore does not conflict with the language of this statute, but is pursuant to and in execution of it, and was authorized by the power conferred on him.

The motion will be sustained.