# JUNE, 1921

## INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V. MRS. J. E. DAWSON ET AL.

### No. 2997.   Decided June 1, 1921.

### (232 S. W., 279.)

**1.—Railways—Johnson Grass—Receivers—Penalties.**

A railway receiver is liable, under articles 6601, 6602, Revised Statutes, for the recovery there authorized for permitting Johnson grass to go to seed on its right of way to the injury of the lands of an adjoining proprietor, where the road was operated by the receiver at the time the grass was so permitted to mature.   (P. 249).

**2.—Same—Statutory Construction.**

The words "railroad" and "railway company" include natural persons as well as corporations; and requirements and regulations necessary to the proper management of the property and the safeguarding of private property and the public protection are just as obligatory upon receivers as upon railroads under the management of their own chosen officers.   (P. 250).

**3.—Cases Discussed.**

United States v. Harris, 177 U. S., 306; distinguished. Sloan v. Central Iowa R. Co., 62 Iowa, 728; Mikkelson v. Truesdale, 63 Minn., 137; Hunt v. Conner, 26 Ind. App., 46; Lampshear v. Buckingham, 33 Conn., 237; Commonwealth v. Felton, 53 S. W., 1046: Atlantic Coast Line v. Georgia, 234 U. S., 289; International & G. N. Ry. Co. v. Bender, 87 Texas, 100; Thompson v. Missouri, K. & T. Ry. Co., 103 Texas, 372; United States v. Ramsey, 116 C. C. A., 568; Huntington v. Attrill, 146 U. S., 657; Central Trust Co. v. Wabash etc. Ry. Co., 26 Fed., 12; Robinson v. Harmon, 157 Mich., 272; Hill v. Boston etc. R. R., 77 N. H., 151; discussed and followed.   (Pp. 250, 253).

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Ellis County.

*Wilson, Dabney & King, Will Hancock,* and *Supple & Harding,* for appellant.

The Court erred in rendering judgment against the International & Great Northern Railway Company because it appeared, from the findings of the court and the statement of facts heretofore filed, that the damages, if any sustained, accrued while the Railway Company was in the hands of the receivers duly appointed by the Federal Court. St. Louis B. & M. Ry. Co. v. Green, 183 S. W., 829 ; Freeman v. Barrie, 133 S. W., 748; Johnson grass Statute, Art 6601 and 2. Revised Statutes, 1911.

The Receiver would not be liable because not mentioned in the statute as one subject to penalty sued for. United States v. Harris, 177 U. S., 305; Turner v. Cross & Eddy, 83 Texas, 218; Hendrix v. Walton, 69 Texas, 192.

Possession of Receiver is possession of Court. Porter v. Sabin, 149 U. S., 479; Hitz v. Jenks, 185 U. S., 155; Campbell v. Wiess, 25 S. W., 1076; Bonner v. Association, 23 S. W., 317; M. K. & T. R'y. Co. v. Stoner, 5 Texas. Civ. App., 50, 23 S. W., 1021; United States v. Harris, 177 U. S., 305; United States v. Nixon, 235 U. S., 231; United States v. Weitzel, 246 U. S., 533.

On motion for rehearing by James A. Baker, Receiver, counsel for appellant further cited: Campbell, Receiver, v. Cook, 86 Texas, 630; Turner v. Cross & Eddy, 83 Texas, 224; State v. Texas & P. Ry. Co., 154 S. W., 1159; United States v. Harris, 177 U. S., 305.

*Clyde F. Winn* and *S. E. Dawson,* for appellee.

Receivers of a railroad company appointed by a Federal Court are subject to penalties under the Texas Johnson Grass Statute. Sec. 65 of Chapter 4 of the Federal Code; which section can also be found in Vol. 4, pages 4946-4947 of Vernon's Sayles' Texas Civil Statutes of 1914; International & G. N. Ry. Co. v. Bender, 87 Texas, 99; Clark v. Dyer, 81 Texas, 339, 16 S. W., 1061-2-3; Peoples v. Yoakum, 7 Texas Civ. App., 85, 25 S. W., 1001; Erb, Receiver, etc. v. Morasch, 20 Sup. Ct. Rep., 819; Peirce Receiver, etc. v. Van Dusen, 69 L. R. A., 705; Central Trust Co. v. Wabash etc. Ry. Co., 26 Fed., 12; Ohio & Mississippi R. Co. v. Russell, 115 Ill., 52; Hornsby v. Eddy, 56 Fed., 461; High on Receivers, 4th Ed., page 539; Thompson on Corporations, Vol. 5, Paragraph 6413; Texas etc. Rv. Co. v. Cox, 145 U. S., 606; Rouse v. Redinger, 1 Kan. App., 366; Rouse v. Harry, 55 Kan., 599.

Mr. Justice PIERSON delivered the opinion of the court.

The facts of the case are clearly and concisely stated by the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas in its certificate as follows:

"Appellee sued the International & Great Northern Railway Company and receivers, appellants, to recover statutory penalties for permitting Johnson grass to go to seed on the right-of-way of appellant railway company, while in the hands of receivers appointed by the United States Court, and judgment entered by the justice court and by the county court; and on appeal from the last judgment to this court the judgment was reversed and rendered for appellant on the ground that the statute, articles 6601-2, providing for penalties and damages, did not authorize a recovery against receivers, when, as in this case, the Johnson grass went to seed after the receivers had taken charge, following the case of United States v. Harris, 177 U. S., 305, which holds that receivers appointed by the United States courts are not liable for penalties, and it is contended that said case is not in point, and that our opinion rendered in this case is in conflict with the

cases of Clark v. Dyer, 81 Texas, 339, 16 S. W., 1061, and other cases of our courts where recoveries have been had against receivers.

''As the exact point here involved has never been decided by the courts in this state and desiring it passed upon by Your Honors, we certify the following question for your decision:

''QUESTION: Are receivers of railway companies appointed by the United States Court liable, under Arts. 6601-2, Rev. Stats., of this state, for allowing Johnson grass to go to seed on the right-of-way of the railway company of which they have control? In other words, are we justified in following the case of United States v. Harris, 177 U. S., 305.''

To the question propounded by the Court of Civil Appeals we answer that receivers of the properties and franchises of railway companies appointed by the United States court are liable under Articles 6601 and 6602 of the Revised Statutes of this State, for allowing Johnson grass to go to seed on the right of way of the railroad of which they have control.

In regard to the penalties provided in Articles 6601 and 6602, the contention of the receivers, appellants, is that while a railway is under the management of receivers under appointment by the Federal Court, there can be no liability for the penalties provided in said articles, because the statute does not mention a receiver as one amenable to its terms; that under the law such receivers are not liable for the penalties sued for; and that it was fundamental error upon the part of the court below to render judgment against the receivers therefor. Their insistence is that on account of the recovery being for penalties, receivers are not liable therefor and do not come under the terms of the statute.

Under a proper construction, receivers of railroads are included in Articles 6601 and 6602, Vernon's Sayles' Texas Civil Statutes.

Article 6601 is as follows:

''It shall be unlawful for any railroad or railway company or corporation doing business in this state to permit any Johnson grass or Russian thistle to mature or go to seed upon any right of way owned, leased or controlled by such railroad or railway company or corporation in this state.''

Article 6602 is in part as follows:

''If it shall appear upon the suit of any person owning, leasing or controlling land contiguous to the right of way of any such railroad or railway company or corporation that said railroad or railway company or corporation has permitted any Johnson grass or Russian thistle to mature or go to seed upon their right of way, such person so suing shall recover from such railroad or railway company or corporation the sum of twenty-five dollars, and any such additional sum as he may have been damaged by reason of such railroad or rail-

way company or corporation permitting Johnson grass or Russian thistle to mature or go to seed upon their right of way.''

The words "railroad" and "railway company" include natural persons as well as corporations, and requirements and regulations necessary to the proper management of the property and the safeguarding of private property and the public protection are just as obligatory upon receivers as upon railroads under the management of their own chosen officers.

A receiver cannot exercise the franchises and powers of a railroad company and at the same time claim immunity from the police regulations and liabilities which have been imposed upon a railroad company by statute. While engaged in operating railroads, we can see no reason why receivers should not be held officially to the same rules of liability that control common carriers. Sloan v. Central Iowa R. Co., 62 Iowa, 728, 16 N. W., 331; Mikkelson v. Truesdale, 63 Minn., 137, 65 N. W., 260; Hunt v. Conner, 26 Ind. App., 46, 59 N. E., 52; Lampshear v. Buckingham, 33 Conn., 237; Commonwealth v. Felton, 53 S. W., 1046; Atlantic Coast Line v. Georgia, 234 U. S., 289.

This court · in an able opinion by Chief Justice Stayton, in the case of I. & G. N. Ry. Co. v. Bender, 87 Texas, 100, announces this rule as follows:

"The liability of a receiver, unless based on some personal wrong, is solely official, and compensation for injury inflicted while a railway company is controlled by a receiver must be made, it at all, from funds belonging to the corporation; and no reason is perceived why the rule of evidence applicable in terms to a railway company should not apply to a receiver when engaged in operating a railway.

"The reasons for enforcing such a rule are as forcible when a railway is under the exclusive control of a court and its receiver as when it is operated by the company to which it belongs, and we see no reason to doubt the propriety of applying the same rules of evidence and the same general rules of law in determining the liability of a receiver which would be applied in determining the liability of a railway company in all cases in which the action is not based on · a statute which by its terms excludes such application.''

In construing a similar statute and in considering and discussing the construction and application to be given penal statutes, Chief Justice Brown in the case of Thompson v. Missouri, Kansas & Texas Railway Company of Texas, 103 Texas, 372, said:

"The defendant in error invokes the rule that penal statutes must be strictly construed and the Honorable Court of Civil Appeals adopted the suggestion, applying the rule in its extreme rigor

to the facts of this case.  The rule upon this subject which now prevails, being sustained by the best authority, is forcibly expressed by Chief Justice Fuller of the United States Supreme Court in the case of United States against Lacher, 134 U. S., on page 629, by the following quotation from Mr. Sedgwick on Statutory and Constitutional Law:  'The rule that statutes of this class are to be construed strictly, is far from being a rigid or unbending one; or rather, it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to ·be fairly construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the punishmnt to cases which are not clearly embraced in them, and, on the other, equally refusing by any mere verbal nicety, forced construction or equitable interpretation, to exonerate parties plainly within their scope.'

"This passage is quoted by Baron Bramwell in Attorney General v. Sillem, 2 R. & C., 532, as one 'in which good sense, force and propriety of language are equally conspicuous; and which is amply borne out by the authorities, English and American, which he cites.'

"That quotation expresses the rule of construction that is applicable to the facts of the case now before us.  State v. Kansas City, Ft. S. & G. R. R., 32 Fed. R., 726; Pike v. Jenkins, 12 N. H., 261.  In the case last cited the court said: 'In construing penal statutes the proper course is to search out and to follow the true intent of the Legislature, and to adopt that sense which harmonizes best with the context, and promotes, in the fullest manner, the apparent policy and objects of the Legislature.'

"In order to determine the proper construction of the language of the articles above quoted from the Revised Statutes, it is necessary that we should ascertain the purpose and intent of the Legislature in enacting them.  Thompson had the undoubted right in shipping his cars of lumber to designate the route by which they should be carried by the different railroads over which they were destined to pass.  Inman & Co. v. St. Louis & S. W. Ry. Co., 14 Texas Civ. App., 39, 37 S. W., 37.  This right is not controverted by the defendant.  That undoubted right would be of little avail to shippers over railroads in this state if there were not some provision for enforcing its observance.  We must look to the language, the subject of legislation, the right to be secured and the evil to be remedied to determine the purpose and intent of the Legislature as embodied in Article 4574, and, judging from the facts of this case, the remedy is not more than adequate.  If a fair construction of the language used in the law, in view of the purpose of its enactment, will embrace the acts of the defendant shown by the evidence, then the evidence establishes a cause of action against the

defendant. If, however, the acts, which are claimed to be a violation of the statute, do not come within the terms of the statute when construed as we have stated, then the court can not inflict the penalty no matter how unjustly the railroad has treated Thompson. The paramount rule for construing statutes of any class is to ascertain what the Legislature intended to prescribe by the language used, 'all others are helps,' to the accomplishment of that purpose.''

In order that there be no confusion and no doubt as to the applicability of valid statutes of the States to the management of property in the hands of a receiver appointed by the United States Court, the Congress of the United States passed the following statute.

''Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall willfully violate any provision of this section shall be fined not more than three thousand dollars, or imprisoned not more than one year, or both. (J. C. Sec. 65; Acts March 3, 1887, c. 373, Sec. 2, 24 Stat. 554; Aug. 13, 1888, c. 866, Sec. 3, 25 Stat. 436; March 3, 1911, c. 231, Sec. 65, 36 Stat. 1104.)'' Barnes' Federal Code, Section 827.

In the case of United States of America v. Asa E. Ramsey, Receiver of the Oklahoma Central Railway Company, 116 C. C. A. 568, 197 Fed., 144, the United State Circuit Court of Appeals held that penalties provided by federal statute limiting the hours during which a ''common carrier'' may keep an employe on duty apply to a receiver appointed by a Federal Court.

After discussing authorities it said:

''From a consideration of the foregoing authorities, it seems to us clear that the term ''common carrier'' had a well-defined meaning, and that the receiver of a railroad came within the designation ''common carrier;'' that Congress, in using the term ''common carrier,'' used it in the sense in which such words are generally meant and understood; that the object and purpose of the statute would be entirely defeated in all cases in which a railroad or other common carrier is operated by a receiver, if the words ''common carrier'' should be given a more restricted meaning than generally understood. It seems clear that a receiver, in the operation of a railroad, is a common carrier within the meaning of the statute; and though he is not personally liable, he is liable in his

official capacity, and the payment of any judgment obtained would be subject to the order of the court appointing the receiver, in the exercise of its equitable powers.''

In regard to the case of United States v. Harris, the court said:

''Defendants rely chiefly upon the case of United States v. Harris, 177 U. S., 305, 44 L. Ed. 780, 20 Sup. Ct. Rep. 609. That case simply held that a receiver of a railroad was not within the letter or spirit of the provisions of the act of March 3, 1873, (Rev. Stat. Secs. 4386-4388, U. S. Comp. Stat. 1901, pp. 2995, 2996).''

The United States Supreme Court and many of the State courts have held receivers liable under statutes similar to the one before us, and that the case of United States v. Harris, 177 U. S. 305, was not in conflict therewith. Huntington v. Attrill, 146 U. S., 657, and cases cited; Central Trust Company v. Wabash, etc. R'y Company (C. C.) 26 Fed. 12; Robinson v. Harmon, 157 Mich., 272, 117 N. W., 664; Hill v. Boston, etc. R. R., 77 N. H., 151.

These opinions contain extensive discussion of the principles upon which statutes similar to our statute under consideration have been sustained, and cite numerous authorities from English and American courts and text writers. We deem further elaboration unnecessary.

Receivers controlling and managing the properties of a railroad should be held to the same accountability in regard to these statutory penalties as the railway corporation itself in the management and control thereof.

We think the legislative intent clear that all railroads doing business in this State, whether managed by a receiver or otherwise, should comply with this Johnson grass statute or pay the penalty for its violation; and that it did not intend to license them under a receivership to neglect or override wholesome regulations for the protection of individual rights and the public good.