In re MARKOS GURNEE PARTNER-
SHIP, Diplomat North, Inc., and
PCS Hotels, Debtors.

Joel A. SCHECHTER, Plaintiff,

v.

STATE OF ILLINOIS, DEPARTMENT
OF REVENUE, Defendant.

Bankruptcy Nos. 91 B 17242, 91
B 18792 and 91 B 18793.
Adv. No. 94 A 00023.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 27, 1995.

212

Brad Berish, Adelman, Gettleman & Merens, Ltd., Chicago, IL, for Joel Schechter, plaintiff and former Chapter 11 Trustee.

Catherine Steege, Chapter 7 Trustee, Jenner & Block, Chicago, IL.

James Newbold, Asst. Atty. Gen., Litigation Div., Chicago, IL, for Dept. of Revenue.

## AMENDED MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This adversary proceeding arises from the failure of a Chapter 11 trustee to pay state taxes that he collected from customers of a hotel and restaurant business owned by the debtors. In a prior adversary proceeding, this court ruled that the unpaid taxes did not constitute a trust fund held for the benefit of the state. *State of Illinois v. Steege (In re Markos Gurnee Partnership)*, 163 B.R. 124 (Bankr.N.D.Ill.1993). In the present proceeding, the Chapter 11 trustee seeks a declaratory judgment that he is not personally liable for the unpaid taxes. While acknowledging that there is a live dispute between the parties, the state contests the trustee's right to relief, both on the merits and on the ground that this court lacks jurisdiction over the dispute. The material facts are uncontested. For the reasons set forth below, the court enters judgment for the trustee.

### Findings of Fact

On August 14, 1991, Markos Gurnee Partnership filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Three weeks later, on September 5, two related entities—Diplomat North, Inc., and PCS Hotels, Inc.—also filed for relief under Chapter 11. Shortly thereafter, Joel Schechter was appointed Chapter 11 trustee in each of the three cases, and in November 1991, the cases were substantively consolidated. The estate created by the cases included a hotel and a restaurant. Schechter operated the hotel and restaurant for over a year, from the date of his appointment until December 17, 1992, when the cases were converted to Chapter 7. As Chapter 11 trustee, Schechter collected two types of state taxes from customers of hotel and restaurant: a "sales" tax pursuant to the Illinois Use Tax Act (Ill.Rev.Stat.1991, ch. 120, para. 439.1, now codified at 35 ILCS 105/1 *et seq.* (1993)), and a hotel tax pursuant to the Illinois Hotel Operators' Occupation Tax Act (Ill.Rev.Stat.1991, ch. 120, para. 481b.31, now codified at 35 ILCS 145/1 *et seq.* (1993)). Schechter submitted monthly tax returns to the Illinois Department of Revenue for each of these taxes. However, for

the first three months of operation, and for the last two, Schechter did not remit the taxes with the returns, and these taxes remain unpaid. The unpaid taxes (not including any applicable taxes and penalties) are as follows:

| Year | Month | Sales Tax | Hotel Tax | Total |
|------|-------|-----------|-----------|-------|
| 1991 | October | $ 5,763.90 | $ 7,052.40 | $12,816.30 |
| | November | 4,806.20 | 7,044.05 | 11,850.25 |
| | December | 5,145.77 | 3,920.51 | 9,066.28 |
| 1992 | November | 4,737.00 | 6,372.56 | 11,109.56 |
| | December | 3,434.00 | 4,062.37 | 7,496.37 |
| Total | | $28,451.89 | $23,886.87 | $52,338.76 |

The deadline for payment of the 1991 taxes had expired before the conversion of the cases to Chapter 7, but the deadline for the November and December 1992 taxes had not. Schechter knew that the taxes had not been paid, but he was also aware of other unpaid administrative expenses. On December 17, 1992, the date of the conversion, Schechter presented a motion for authority to pay the final payroll of the employees of the debtors, totalling approximately $50,000. The Illinois Department of Revenue received notice of the motion and did not object. The motion was granted and the employees were paid. After the conversion, Schechter turned over the balance of the assets of the estates—more than $82,000—to the new Chapter 7 trustee. At the time of the conversion, the only other unencumbered assets of the estate were receivables of less than $50,000, while there were outstanding administrative claims in the Chapter 11 case in excess of $315,000. Thus, the Chapter 11 case appeared to be administratively insolvent at the time it was converted.

In the course of the Chapter 7 administration, the Illinois Department of Revenue filed a claim for the unpaid taxes, and also filed a complaint against the Chapter 7 trustee to determine whether the state had an equitable interest in the Chapter 11 funds turned over to that trustee. On December 7, this court entered judgment against the Department, holding that it had a claim against the assets of the Chapter 7 estate only as an administrative creditor in the Chapter 11 case.

Thereafter, the Department issued a "Notice of Intent to Issue a Notice of Penalty Liability" against Schechter in his personal capacity, and has acknowledged that it will seek payment from Schechter personally.

Schechter filed the present adversary proceeding to obtain a declaratory judgment that he is not personally liable for the unpaid taxes. The Department initially responded with a motion to dismiss, contending that this court lacked jurisdiction to determine the issues. The court stated its intention to deny the motion, and thereafter, the parties filed cross motions for summary judgment, based on a joint statement of uncontested facts that is reflected in the foregoing findings. Both the motion to dismiss and the summary judgment motions have been briefed by the parties, and this decision addresses the issues raised in each of the motions.

### Jurisdiction

Under 28 U.S.C. § 1334(b) adversary proceedings are within the jurisdiction of the district court if they "arise under" the Bankruptcy Code (Title 11, U.S.C.), or if they "arise in" or are "related to" a case under the Code.[1] Such adversary proceedings may be referred to a bankruptcy judge pursuant to 28 U.S.C. § 157(a), and have been so referred pursuant to General Rule 2.33 of the United States District Court for the Northern District of Illinois. The parties to the present proceeding are in dispute about whether this proceeding arises under the Bankruptcy Code or arises in the Markos Gurnee bankruptcy cases. For the reasons set forth below, the court finds that the proceeding does so arise, and that it is a "core proceeding" in which, pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A), a bankruptcy judge may enter final judgment.

### Conclusions of Law

#### A. Trustee Liability in General

The liability of bankruptcy trustees is a complex issue. The Bankruptcy Code does not directly address trustee liability, but rather appears to incorporate concepts that developed under the Bankruptcy Act of 1898.

---

1. Section 1334(b) provides: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Those concepts, in turn, were based on judicial adaptations of rules developed for common law trustees and receivers. The result is a set of confusing and somewhat contradictory precedents. *See generally* E. Allan Tiller, Personal Liability of Trustees and Receivers in Bankruptcy, 53 Am.Bankr.L.J. 75 (1979) (surveying the state of the law under the Bankruptcy Act). To decide the question raised by the present case—whether a trustee is personally liable for failing to pay taxes incurred by the estate—it is necessary to distinguish some general principles of trustee liability in bankruptcy.

 *1. For purposes of standing in litigation, an estate in bankruptcy is viewed as a distinct entity, but not as a legal person. Thus, the estate can sue or be sued, but only in the name of its trustee. Such an action involves only the trustee's "official capacity," so that the estate, rather than the trustee personally, is liable.*

 ■ It is a general principal of the common law that only "legal persons" may sue or be sued. See *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 480, 53 S.Ct. 447, 449, 77 L.Ed. 903 (1933) (discussing the status as a "legal person" of a Puerto Rican business association). At common law, the estate created by a trust agreement or a will is not a legal person, and so has no capacity to sue or be sued. *Lazenby v. Codman*, 116 F.2d 607, 609 (2d Cir.1940) (A testamentary trust "is not a juristic person and the trustee is the only party entitled to bring suit."); *Hanson v. Birmingham*, 92 F.Supp. 33, 41 (N.D.Iowa 1950) (A common law trust "is certainly not a person in the eye of the law."). Instead, the trustee is the proper party to any lawsuit involving a trust. *Navarro Savings Ass'n. v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (holding that the trustee is the real party in interest for purposes of determining diversity of citizenship in litigation involving a trust). Moreover, because the common law did not consider a trust estate as an entity separate from the trustee, any judgment obtained in litigation against a common law trustee would bind the trustee personally. *Vass v. Conron Bros. Co.*, 59 F.2d 969 (2d Cir.1932) (noting that trustees are personally liable under the law of New York); *Hanson v. Birmingham*, 92 F.Supp. at 41 (stating the general rule, and noting the potential for the trustee to be reimbursed from the trust estate).

 ■ In bankruptcy, it was never doubted that the trustee, rather than the debtor's estate, was the proper party in litigation involving the estate. However, there developed a second principle, at variance with the usual common law rule, that in such litigation, the bankruptcy estate, as a separate entity, was the real party in interest, with the trustee serving merely as a representative. Thus, the trustee is not personally liable to judgment, but rather is liable only "in an official capacity," so that any judgment is payable only out of the estate assets.

 This principle arose from cases involving common law receivers. In one prominent early decision, the United States Supreme Court held that a receiver appointed to operate a railroad could not be sued for negligence in the operation of the railroad except in the court that appointed him or by leave of that court. *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). The basis for this decision was a determination by the court that the receivership was an entity under the control of the court, with the receiver as the court's agent, and that the purpose of the suit, and its potential effect was "to take the property of the trust from [the receiver's] hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property." *Id.* at 129. With this understanding—that a suit against the receiver was in reality a claim against the assets the receiver was administering—the Court found it necessary for the court that appointed the receiver to be involved in the litigation. Otherwise, "the charges and expenses of the administration [could] be controlled by other courts, at the instance of impatient suitors, without regard to the equities of other claimants, and ... the trust property [could] be wasted in the costs of unnecessary litigation." *Id.* at 130.

 In a subsequent nineteenth century decision, the court made even more explicit the

holding that suits against receivers are to be considered as claims against the estate administered by the receiver, rather than claims against the receiver personally. *McNulta v. Lochridge,* 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796 (1891), was another negligence suit against a railroad operated by a court appointed receiver. However, the receiver who operated the railroad at the time the suit arose had been replaced prior to the time that the suit was filed, and so his successor was named as defendant. The successor receiver demurred, contending that he could not be personally liable for the acts of his predecessor. The Supreme Court rejected this defense, on the ground that a suit against a receiver was really a suit against his office, so that it made no difference that the identity of the individual receiver had changed. *Id.* at 331, 12 S.Ct. at 12–13. The Court stated that the trustee's position was analogous to that of a corporation sole, *i.e.,* a person whose office carries with it control over a separate corporate entity. *Id.*[2] The Court then engaged in the following discussion, clearly identifying the receivership as separate from the receiver personally.

> If actions were brought against the receivership generally or against [the railroad] by name, 'in the hands of,' or 'in the possession of,' a receiver without stating the name of the individual, it would more accurately represent the character or status of the defendant. So long as the property of the [railroad] remains in the custody of the court and is administered through the agency of a receiver, such receivership is continuous and uninterrupted until the court relinquishes its hold upon the property, though its personnel may be subject to repeated changes. *Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfea-*
> *sances, negligences and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands.*

*Id.* at 331–2, 12 S.Ct. at 13 (emphasis added).

The holdings of *Barton* and *McNulta*—that receiverships are entities that may be sued by naming the receivers in their official capacity—was later applied to trustees appointed under the Bankruptcy Act of 1898. *Vass,* 59 F.2d at 970:

> [T]rustees in bankruptcy ... may be sued by their title, and judgments against [them] bind the assets.
>
> \* \* \* \* \* \*
>
> A trustee is equally an officer of the court (Bankr.Act § 33 [11 U.S.C.A. § 61]); and his possession is protected because it is the court's; quite like a receiver's. If so, and if, as is the case, it is an interference with a receiver's custody to establish claims against him by judgment, it is difficult to see why the same should not hold of a trustee.

(Citations omitted.) These holdings appear to be assumed by Section 323 of the Bankruptcy Code (11 U.S.C.), which provides that a trustee under the Code, as the "representative of the estate," has the "capacity to sue or be sued."[3]

*2. A bankruptcy trustee generally is immune from suit for actions arising out of the operation of the estate.*

As a corollary to the rule that bankruptcy estates may be sued by naming trustees in their official capacity, bankruptcy trustees are generally immune from suit for actions arising out of the operation of the estate. By treating actions against receivers as implicitly involving only the receivers' official capacity, the Supreme Court in *Barton* and *McNulta* effectively created such per-

---

**2.** For a discussion of the nature of corporations sole see Catherine M. Knight, Comment, Must God Regulate Religious Corporations? A Proposal for Reform of the Religious Corporation Provisions of the Revised Model Nonprofit Corporation Act, 42 Emory L.J. 721, 724 (1993).

**3.** However, most claims against a bankruptcy estate are not brought as lawsuits naming the trustee. Rather, most claims are asserted direct-

ly against the estate, within the bankruptcy case, either under the claims procedure of Sections 501 and 502 of the Code, or under the administrative expense procedures of Section 503. *See, e.g., In re Hemingway Transport, Inc.,* 954 F.2d 1, 5–7 (1st Cir.1992), and *In re Chicago Pacific Corp.,* 773 F.2d 909 (7th Cir.1985) (discussing the allowance and priority of a postpetition claims against an estate in bankruptcy).

sonal immunity. Later decisions made this immunity explicit for bankruptcy trustees, employing a variety of formulations. *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir.1986) ("[A] trustee in bankruptcy or an official acting under the authority of the bankruptcy judge, is entitled to derived judicial immunity because he is performing an integral part of the judicial process."); *In re Johnson*, 518 F.2d 246, 251 n. 5 (10th Cir.), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975) ("[B]y acting in his official capacity the trustee does not incur a personal liability as does the trustee of an express trust.... The bankruptcy trustee acts as the representative of a separate entity, the estate; he obligates this entity....") (quoting 3A Collier on Bankruptcy, § 62.03 (14th ed.)); *Ziegler v. Pitney*, 139 F.2d 595, 596 (2d Cir.1943) ("[R]eceivers and trustees appointed under the Bankruptcy Act and authorized to conduct business on behalf of an estate in reorganization are by the weight of authority only liable as receivers or trustees, and not individually...."). Thus, a trustee is not personally liable on contracts entered into on behalf of the estate, or for torts committed by employees of the estate. *In re Rollins*, 175 B.R. 69, 77 n. 7 (Bankr. E.D.Cal.1994) ("If a trustee incurs a contract or tort liability to someone other than the debtor or a creditor of the estate, he is entitled to a qualified judicial immunity. The contract or tort claimant is generally permitted to pursue the estate and the trustee in his or her representative capacity, but not personally.")

> 3. *Trustees are personally liable to injured parties for conduct outside the scope of a trustee's duties. Negligence in carrying out those duties does not result in personal liability, but willful violations of applicable nonbankruptcy law may be a basis for personal liability.*

■ The personal immunity of trustees is not unlimited. It is obvious that receivers and bankruptcy trustees cannot impose liability on the estates for matters that have nothing to do with estate administration. For example, a bankruptcy trustee could hardly assert that the estate is responsible for paying the trustee's home mortgage; nor could an attorney-trustee, sued for malpractice in a case unrelated to the bankruptcy, expect the estate to be liable for the judgment. The personal immunity of receivers and trustees extends only to matters that are within the scope of their duties in administering the estate. There is no personal immunity for acts that are "ultra vires" or outside the scope of the trustee's duties. *Ziegler*, 139 F.2d at 596 (bankruptcy trustees only liable in an official capacity "except in cases where they act outside their authority.")

■ The situation in which trustees have been most commonly found to have acted outside of their authority is in seizing property which is found not to be property of the estate. *See, e.g., Leonard v. Vrooman*, 383 F.2d 556 (9th Cir.1967), *cert. denied*, 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968) (holding a trustee personally liable to suit in state court for wrongful seizure of real property); *Barton*, 104 U.S. at 134 (citing authorities for the proposition that "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires"). The rationale for these decisions is clear: trustees act on behalf of the estate, and obligate only the estate, insofar as they are carrying out the duties required of their office.[4] When they take action not within the scope of those duties, they are acting on their own. Since the bankruptcy laws do not permit trustees, on their own authority, to seize estate property in the possession of a nondebtor, they are personally liable for seizing such property that does not actually belong

---

4. Thus, the liability of the estate for acts of bankruptcy trustees is similar to the liability of principals for the acts of their agents: "The principal is held liable for acts done on his account by a general agent which are incidental to or customarily a part of a transaction which the agent has been authorized to perform." Harold Reuschlein & William Gregory, The Law of Agency & Partnership § 97 (2d ed. 1990), citing *Dixie Life & Accident Insurance Co. v. Hamm*, 233 Ark. 320, 344 S.W.2d 601 (1961).

to the debtor.[5] At the same time, the estate is not liable for the ultra vires action.[6]

One commentator has suggested another exception to the personal immunity of trustees and receivers: that they may be held liable for negligence in carrying out their duties if the negligence involves positive acts (as opposed to omissions) and the trustee or receiver personally commits the acts. E. Allan Tiller, Personal Liability of Trustees and Receivers in Bankruptcy, 53 Am.Bankr. L.J. 75, 81 (1979). The commentator suggests that this rule may reflect an understanding that positive acts of negligence are outside the scope of the receiver/trustee's authority. Such a rule, however, seems not well grounded. First, courts have recognized that imposing personal liability for unintentional tortious acts of a bankruptcy trustee could create a significant disincentive to trustee service. *State v. Better Brite Plating, Inc.,* 168 Wis.2d 363, 386, 483 N.W.2d 574, 583 (1992). Second, the holdings of the reported decisions do not appear actually to support the rule. For example, one of these decisions cited in the commentary, *Richins v. Mitchell,* 19 Utah 2d 406, 408, 432 P.2d 39, 40 (1967), implies that a receiver might be held personally liable if he were shown to be "guilty of something more than a mere omission in connection with his duties," but the decision actually holds that the receiver was not personally liable for failing to procure workmen's compensation insurance. Another cited decision, *Chiesur v. Superior Court,* 76 Cal.App.2d 198, 201, 172 P.2d 763, 765 (1946), holds that a party allegedly injured because of a receiver's negligence in maintaining a building had no cause of action against the receiver personally. And *Chiesur* states the rule of personal immunity quite broadly: "[A] receiver is liable to those who are not interested in the estate, in his official capacity only, for negligence in the performance of his authorized duties, and . . .

the recovery is a charge upon the estate in receivership." 76 Cal.App.2d at 201, 172 P.2d at 765. Thus, the decisions appear to be consistent with the pronouncement of the United States Supreme Court in *McNulta:* that a receiver's "misfeasances, negligences, and liabilities are official and not personal." 141 U.S. at 332, 12 S.Ct. at 13. *See also United States v. Ramsey,* 197 F. 144, 148 (8th Cir.1912), holding that a federal law restricting hours of employment was applicable to a railroad in receivership, but that violation of the law resulted only in official liability.

On the other hand, bankruptcy trustees may not carry out their duties, with personal impunity, in deliberate disregard of applicable nonbankruptcy law. Title 18 U.S.C. § 1911 provides criminal penalties for willful disregard of applicable state law by federal trustees and receivers, and the fact of a deliberate violation of state law may be relevant in determining whether the act was within the scope of a bankruptcy trustee's authority. Furthermore, although a tortious act may be within the scope of a trustee's authority, and thus require that the injured party proceed only against the estate, the estate may have a resulting claim against the trustee for its loss, as next discussed.

*4. A bankruptcy trustee is personally liable for breach of a duty to the estate or to creditors of the estate, but may protect against such liability by obtaining a court order authorizing contemplated action.*

Apart from ultra vires acts, there is one other, major exception to the personal immunity of bankruptcy trustees—actions for breach of fiduciary duty. As with common law trustees, the courts have recognized a number of fiduciary duties incumbent upon bankruptcy trustees, some of which are set forth in Section 704 of the Bankruptcy Code.[7]

---

**5.** Fed.R.Bankr.P. 7001 provides that a trustee may bring an adversary proceeding to recover money or property, and *Leonard v. Vrooman* suggests other alternatives to trustee seizure of disputed property. 383 F.2d at 560–61.

**6.** *See Woodall v. Leachman,* 109 Ga.App. 86, 87, 134 S.E.2d 844, 845 (1964) (claim against bankruptcy trustee for seizure of fixtures in property

rented by debtor; court notes that "plaintiffs do not seek to interfere with property in the custody of the bankruptcy court").

**7.** Section 704 provides: The trustee shall—
 (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

Among these duties is that of being accountable for all property of the estate. Thus, a trustee has a duty to obtain and preserve estate property. *In re Power*, 115 F.2d 69, 72 (7th Cir.1940) ("A trustee in bankruptcy ... is an officer of the court.... It is his duty to collect the assets and he is responsible for failure to do so."); *In re Hutchinson*, 5 F.3d 750, 758 (4th Cir.1993) (remanding an action against a trustee for determination of whether the trustee failed to preserve estate property). Beyond the statutory duties, bankruptcy trustees owe to the beneficiaries of the estate the usual common law trust duties, such as the duty of loyalty, which proscribes self-dealing. *Mosser v. Darrow*, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951) ("Equity tolerates in bankruptcy trustees no interest adverse to the trust."). Similarly, it has been held that a bankruptcy trustee has a common law duty to invest funds of the estate in interest-bearing accounts. *In re Consupak, Inc.*, 87 B.R. 529, 539–40 (Bankr.N.D.Ill.1988).

 Although it is generally accepted that "a trustee is not liable in any manner for mistakes in judgment where discretion is allowed," *Hutchinson*, 5 F.3d at 753, the reported decisions reflect a substantial dispute as to whether a bankruptcy trustee may be personally liable for simple negligence in carrying out fiduciary duties, a position advocated by *In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir.1983), or whether willful and deliberate violations of fiduciary duty are the only ground for personal liability, as advocated by *Sherr v. Winkler*, 552 F.2d 1367 (10th Cir.1977).[8] Regardless of which of these positions is accepted, however, it is plain that bankruptcy trustees are subject, under appropriate circumstances, to personal liability for breaching their fiduciary duties. Where a trustee is liable for a breach of duty that harms the estate generally, the trustee will be required to reimburse the estate personally, through a court-ordered "surcharge."[9] Where a breach of duty harms a particular beneficiary of the estate (as when a trustee fails to preserve property in which a creditor has a security interest), the surcharge will be imposed in favor of the party harmed. *In re San Juan Hotel Corp.*, 847 F.2d 931, 938 (1st Cir.1988); *In re Gorski*, 766 F.2d 723, 727 (2d Cir.1985) ("In the usual case, a surcharge is imposed on the fiduciary in the amount of the actual or estimated financial harm suffered by either the creditors or the estate and is payable accordingly.").

 In some circumstances trustees may be in doubt as to whether certain action they contemplate would be a violation of their fiduciary duties. Rather than avoiding all such action or engaging in the action at the risk of a surcharge, the trustees may seek a ruling from the bankruptcy court, after giving full notice of all of the relevant facts to the interested parties. This procedure was recommended in *Mosser*, 341 U.S. at 273–74, 71 S.Ct. at 683–84, and is discussed in several subsequent opinions, some referring to the protection of the trustee as a form of immu-

---

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title [11 U.S.C.A. § 521(2)(B)];

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

**8.** See *Hutchinson*, 5 F.3d at 752–53 and *Consupak*, 87 B.R. at 546, for further citations and discussion of the conflicting decisions.

**9.** "[T]he term 'surcharge' ... means to impose 'personal liability on a fiduciary for ... misconduct in the administration of his fiduciary duties,' *Black's Law Dictionary* 1292 (rev. 5th ed. 1979)...." *Cochise College Park*, 703 F.2d at 1358 n. 26.

nity. *E.g., Hutchinson,* 5 F.3d at 753 (Trustees "are completely immune from suit where the trustee acts pursuant to the explicit instructions of the bankruptcy court."); *San Juan Hotel Corp.,* 847 F.2d at 942 ("[S]uch judicial immunity is contingent upon 'candid disclosure' to the court and the creditors of the relevant circumstances surrounding the proposed action."). It is important to recognize that the "immunity" flowing from a court order directing trustee action is distinct from the personal immunity discussed above. Court orders protect trustees from surcharge for action potentially violative of their bankruptcy-related fiduciary duties; this immunity requires notice to affected parties and disclosure of relevant facts. The general personal immunity of bankruptcy trustees—which applies to claims other than for breach of bankruptcy-related fiduciary duties, arising out of the operation of the estate—renders the estate rather than the trustee liable without the need for notice or a court order of any kind.

5. *The appropriate forum for an action against a bankruptcy trustee depends on the nature of the action.*

■■■■ As noted in the jurisdictional statement of this opinion, the jurisdiction of a bankruptcy judge to issue a final decision in an adversary proceeding depends first on whether the proceeding is within the bankruptcy jurisdiction of the district court, pursuant to 28 U.S.C. § 1334(b) and second on whether the proceeding is a "core matter," referred to the bankruptcy judge pursuant to 28 U.S.C. § 157(a) and (b). *See Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161–63 (7th Cir.1994); *In re Wolverine Radio Co.,* 930 F.2d 1132, 1140–45 (6th Cir.1991); *Diamond Mortgage Corp. v. Sugar,* 913 F.2d 1233, 1238–39 (7th Cir.1990) (discussing bankruptcy jurisdiction generally). A proceeding is within the bankruptcy jurisdiction defined by Section 1334(b) if it "arises under" the Bankruptcy Code (Title 11, U.S.C.) or "arises in" or is "related to" a case under the Code. These terms have been defined by the case law as follows:

● "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11. . . ." *Wolverine Radio,* 930 F.2d at 1144.

● " '[A]rising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Id.*

● "Related" matters include those whose resolution "may have a direct and substantial impact on the asset pool available for distribution." *Diamond Mortgage,* 913 F.2d at 1239.

■■■■ Both proceedings "arising under" the Code and those "arising in" cases under the Code are core proceedings, as to which bankruptcy judges may issue final judgment. *Wolverine Radio,* 930 F.2d at 1144; *Diamond Mortgage,* 913 F.2d at 1239. However, matters that are merely related to a bankruptcy case are not core proceedings, and thus, although they are within the bankruptcy jurisdiction of the district court, a bankruptcy judge to whom such a matter is referred may only propose findings of fact and conclusions of law to assist the district court in rendering judgment. 28 U.S.C. 157(c); *Wolverine Radio,* 930 F.2d at 1144.

Under these jurisdictional provisions, the different types of liability for bankruptcy trustees create different jurisdictional results.

(a) *Official liability actions must be brought in the bankruptcy court presiding over the case unless that court grants leave for such an action to be heard in a different forum or unless the action involves the trustee's carrying on of business connected with property of the estate.*

■■■■ As noted above, the Supreme Court's decision in *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881), provided both that actions against a receiver should generally be treated as "official liability" actions, reaching only the assets that the receiver was administering, and also that these actions must be brought either in the court that had appointed the receiver or with that court's leave, so that the administration of the assets involved would not be impaired. The *Barton* rule generally remains the juris-

diction standard under current bankruptcy law. Since official liability actions are in fact claims against the assets of the estate in bankruptcy, it is clear that these actions are at least within the "related to" bankruptcy jurisdiction defined by 28 U.S.C. § 1334(b), since they may have "a direct and substantial impact on the asset pool available for distribution." But official liability actions are more than "related." Whether considered as claims under Section 501 of the Bankruptcy Code or as requests for payment of administrative expenses under Section 503, official liability actions "involve a cause or action created or determined by a statutory provision of title 11," and hence also "arise under" the Bankruptcy Code. Thus, actions against trustees in their official capacity are core proceedings as to which a bankruptcy judge may enter final judgment, pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(B), and the automatic stay would operate to prevent litigation of these actions outside of the bankruptcy court without that court's consent, pursuant to 11 U.S.C. § 362(a)(3) (stay operates against any act to obtain property from the estate).[10]

There is one exception to the *Barton* rule, however, meant to alleviate a negative impact that the rule had on those injured by the operations of large enterprises in receivership. Rather than being able to sue in the jurisdiction where the cause of action arose, the injured parties, under *Barton*, would be required to appear before the potentially distant forum in which the receiver had been appointed. Congress responded to this situation, in 1887, with a statute that altered the *Barton* rule by providing that receivers appointed by federal courts to manage property "may be sued in respect of any act or transaction ... in carrying on the business connected with such property, without the previous leave of the court in which such receiver was appointed." Act of March 3, 1887, ch.

373, 24 Stat. 552, as corrected by the Act of August 13, 1888, ch. 866, 25 Stat. 433. The Act retained, however, the equitable power of the court appointing the receiver, subjecting any local court action "to the general equity jurisdiction of the court in which [the] receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." *Id.*

A subsequent Supreme Court decision, *Gableman v. Peoria, Decatur & Evansville Ry.*, 179 U.S. 335, 338, 21 S.Ct. 171, 172–73, 45 L.Ed. 220 (1900), reflected on the purpose of the 1887 legislation:

> This act ... gave the citizen the unconditional right to bring his action in the local courts, and to have the justice and amount of his demand determined by the verdict of a jury. He ceased to be compelled to litigate at a distance, or in any other forum, or according to any other course of justice, than he would be entitled to if the property or business were not being administered by the Federal court.

At the same time, the Court made plain its understanding that the action in the local court would still be an "official liability" action, enforceable only against the receivership's assets:

> "Of course it devolves on the court in possession of the property or funds out of which judgments against its receiver must be paid to adjust the equities between all parties, and to determine the time and manner of payment of judgment creditors necessarily applying for satisfaction from assets so held to the court that holds them."

*Id.* at 339, 21 S.Ct. at 173.

▮▮▮▮ The 1887 legislation, now codified at 28 U.S.C. § 959(a), has been extended to apply to both trustees and debtors in possession.[11] Thus, in actions arising out of a

---

10. The procedure for obtaining the bankruptcy court's consent to pursue an action against the trustee in another forum would be by a motion for relief from the automatic stay or for abstention. See 11 U.S.C. 362(d) (relief from stay); 28 U.S.C. § 1334(c)(1) (discretionary abstention); *In re Baptist Medical Center*, 80 B.R. 637, 643 (Bankr.E.D.N.Y.1987) (discussing interplay between the *Barton* rule and the automatic stay).

11. Section 959(a) provides:

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to

trustee's operation of the debtor's business, the trustee may be sued, in an official capacity, in a local forum, without the permission of the bankruptcy court presiding over the case.[12] However, the bankruptcy court retains concurrent jurisdiction over official liability actions against trustees, and, where adjudication of a particular action in a nonbankruptcy forum would "embarrass, burden, delay or otherwise impede" the bankruptcy proceedings, the bankruptcy court may enjoin the prosecution of that action in the nonbankruptcy forum, pursuant to the "general equity" provision of Section 959(a). *Baptist Medical Center,* 80 B.R. at 642, quoting *Jaytee–Pendell Co. v. Bloor,* 547 F.2d 13, 16 (2d Cir.1978).

(b) *Ultra vires actions must generally be brought in the appropriate nonbankruptcy forum.*

 In contrast to official liability actions, which involve claims against the assets of the estate, and require the involvement of the bankruptcy court at least to enforce any judgment, "ultra vires" actions involve only the personal liability of trustees, and so they would ordinarily have no impact on the assets available for distribution to claimants against the estate. Moreover, the Bankruptcy Code sets forth no substantive or procedural provisions regarding ultra vires actions; indeed, these actions by their nature allege conduct that is beyond the scope of a

trustee's duties under the Code. Hence, ultra vires actions generally implicate none of the bases for bankruptcy jurisdiction, and are properly determined in a nonbankruptcy forum with no input from the bankruptcy court.

This was the holding of an early case decided under the Bankruptcy Act, *In re Kalb & Berger Manufacturing Co.,* 165 F. 895 (2d Cir.1908). In *Kalb & Berger,* a party with whom the bankruptcy receiver allegedly contracted for storage services sued the trustee for breach of that contract in state court, both individually and in his official capacity. The receiver applied to the federal district court which had appointed him for an injunction against the state court action, and obtained the injunction. The state court plaintiff appealed, and the order of injunction was reversed insofar as it applied to the action against the receiver as an individual. The court explained that a receiver could contract so as to bind himself personally, "and if he acts beyond his powers he necessarily assumes individual responsibility." *Id.* at 896. Under these allegations, the state court had jurisdiction that could not be removed by the federal courts, since "[t]he power conferred by the bankruptcy act to determine controversies with respect to the collection and distribution of the bankrupt estate cannot be extended to confer jurisdiction to stay proceedings against officers in their individual capacities." *Id.*[13]

the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

Following the literal language of the *Barton* opinion, both the language of Section 959(a) and the decisions applying it under the Bankruptcy Code still speak of the court presiding over a bankruptcy as the "appointing court." *See, e.g., In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993). ("It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done.... within the trustee's authority as an officer of the court. .... This requirement enables the Bankruptcy Court to maintain better control over the administration of the estate.") Technically, it is incorrect to use the term "appointing court" to describe a bankruptcy court, since neither trustees nor debtors in possession are appointed by such courts. *See* 11 U.S.C. §§ 701, 702, 1101, 1104, 1202, 1302.

12. There is sometimes a question as to whether an action brought under Section 959(a) actually

involves "carrying on business" connected with estate property, as discussed in *In re DeLorean Motor Co.,* 991 F.2d at 1240–41; *In re Beck Industries, Inc.,* 725 F.2d 880, 886–87 (2d Cir. 1984); and *In re Baptist Medical Center,* 80 B.R. 637, 642–43 (Bankr.E.D.N.Y.1987). Where official liability actions are premised on conduct other than carrying on business (*e.g.,* the liquidation of assets), the *Barton* rule still applies, requiring the action to be brought in the court presiding over bankruptcy, or with that court's consent, *DeLorean Motor Co.,* 991 F.2d at 1241; *Beck Industries,* 725 F.2d at 887; *Baptist Medical Center,* 80 B.R. at 643.

13. On the other hand, the court held that the district court properly enjoined the state court action against the trustee in his official capacity, applying the *Barton* rule, and noting that the Act of March 3, 1887, did not apply because the receiver was not carrying on business. *Id.* at 896.

More recent cases have continued the rule that ultra vires actions should be heard in the appropriate nonbankruptcy forum, but they do allow for bankruptcy court adjudication in special circumstances where administration of the estate may be impacted. *Leonard,* 383 F.2d at 560. ("[W]hen a trustee acts in excess of his authority and is sued in a state court for such acts, he will not be protected by the injunctive power of the Bankruptcy Court, except in cases where the state court suit affects the bankrupt estate or its administration ... or where the equities of the case may demand injunctive relief.") [14]

*(c) Actions for breach of fiduciary duty must be brought in the bankruptcy court presiding over the case.*

 Actions against bankruptcy trustees for breach of their bankruptcy-related fiduciary duties present a jurisdictional question in between the questions presented by official liability and ultra vires cases. Like ultra vires actions, fiduciary claims against trustees involve personal trustee liability, with no necessary impact on the assets of the estate. However, like official liability actions, the Code establishes the office of trustee and defines many of the trustees' duties. 11 U.S.C. §§ 323, 704, 1106, 1202, 1302. Moreover, an action against a bankruptcy trustee for breach of bankruptcy-related fiduciary duty can only arise in a bankruptcy case. Thus, fiduciary claims against trustees are within the bankruptcy jurisdiction defined by 28 U.S.C. § 1334(b) both as "arising under" the Code and as "arising in" a bankruptcy case.

This precise jurisdictional question appears not to have been discussed in cases

applying Section 1334. However, it appears that in all of the reported decisions, the actions seeking a surcharge against bankruptcy trustees for breach of bankruptcy-related fiduciary duties were in fact brought in and considered by bankruptcy courts. *See, e.g., Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951); *Sherr v. Winkler,* 552 F.2d 1367 (10th Cir.1977); *In re Cochise College Park, Inc.,* 703 F.2d 1339 (2d Cir.1983); *In re Hutchinson,* 5 F.3d 750 (4th Cir.1993); *In re Barrows,* 171 B.R. 455 (Bankr.D.N.H.1994). Thus, the Wisconsin Supreme Court has recognized that "state courts traditionally do not have jurisdiction over breach of fiduciary duty cases" involving bankruptcy trustees, and stated that it was able to find "no case where a breach of fiduciary suit was brought against a bankruptcy trustee in state court." *State v. Better Brite Plating, Inc.,* 168 Wis.2d 363, 376–77, 483 N.W.2d 574, 579 (1992).

*B. The Claim Against the Trustee in the Present Case*

 Applying the general principles of trustee liability to the facts of the present case is complicated by what appears to be a shift in the position of the Illinois Department of Revenue during the briefing. Initially, in seeking to dismiss this case for lack of jurisdiction, the Department recognized that the bankruptcy court would have jurisdiction over a claim that Schechter had breached a bankruptcy-related fiduciary duty, and stated that it was not asserting such a claim. Reply Brief, March 7, 1994, at 2. Rather, the Department stated, its claim against Schechter was an ultra vires action: "[T]he Department asserts that Schechter's

14. *Bumb v. Bonafide Mills, Inc.,* 327 F.2d 544 (9th Cir.1964), provides an example of a situation in which a bankruptcy court properly ·assumed jurisdiction over an ultra vires action that was originally filed in state court. The claimant, a creditor of the estate, asserted that the bankruptcy receiver exceeded his authority by assuming control over property that the claimant had given to the debtor on consignment (the property was subsequently lost). However, the claimant had asserted a claim in the bankruptcy for the amount of its loss on the allegedly consigned goods, and had received a payment through the estate. The Court of Appeals found that if the claimant was correct in asserting that the lost

goods had never been property of the estate, then the claimant had no basis for a claim against the estate, and should be required to pay into the estate the amount that it had received in dividends. Thus, the bankruptcy court was the proper forum for the resolution of the dispute. *Id.* at 548. This result accords with the present jurisdictional standard of 28 U.S.C. 1334(b), since the outcome of the case against the receiver, as explained by the court in *Bumb,* had a direct impact on the amounts available for distribution to creditors of the estate. *See Diamond Mortgage Corp. v. Sugar,* 913 F.2d at 1239 (discussing § 1334(b)).

acts of not paying the applicable taxes were outside the scope of his authority as trustee." *Id.* However, in briefing the cross-motions for summary judgment on the merits of this case, the Department argued at length that liability should be imposed on Schechter because he had breached a duty to pay the taxes, under the authority of *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951) and its progeny. Supporting Memorandum, July 26, 1994, at 5–12; Opposition Memorandum, August 11, 1994, at 5–8. In order to be complete, both of these arguments will be addressed in this opinion, although it is possible that the Department has abandoned the ultra vires claim.[15]

> 1. *Schechter's nonpayment of taxes accruing from the operation of the estates was within the scope of his authority as bankruptcy trustee.*

■ The Department's ultra vires claim appears to be (1) that Schechter was required to pay the taxes, and (2) that failing to do so was therefore outside the scope of his authority. This misconceives the nature of an ultra vires action. As set forth above, a bankruptcy trustee is viewed as the representative of a separate legal entity, the estate, and the trustee's "misfeasances, negligences and liabilities" on behalf of the estate give rise to liability only in an official capacity; as an individual, the trustee is immune. *McNulta v. Lochridge*, 141 U.S. 327, 331–32, 12 S.Ct. 11, 12–13, 35 L.Ed. 796 (1891); *Vass v. Conron Bros. Co.*, 59 F.2d 969, 970 (2d Cir.1932); *In re Johnson*, 518 F.2d 246, 251 n. 5 (10th Cir.), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975).

Just as a trustee's conduct does not become ultra vires because it is negligent, so it does not become ultra vires because it violates an obligation imposed by state law. This was the holding in *State v. Better Brite Plating, Inc.*, 168 Wis.2d 363, 483 N.W.2d 574 (1992), where bankruptcy trustees were sued personally because they had stored hazardous wastes, generated by the estate's business, in violation of state law. The Wisconsin Supreme Court rejected the contention that "a violation of state law automatically means that the trustee acted outside his or her scope of authority" and held that the trustee's actions were in fact within the scope of their authority in operating the debtor's business, requiring dismissal of an ultra vires action. *Better Brite*, 168 Wis.2d at 387, 483 N.W.2d at 583. *See also International & G.N. Ry. v. Dawson*, 111 Tex. 247, 232 S.W. 279 (1921) (receiver of railroad liable only in an official capacity for failing to remove certain weeds from the railroad right of way, as required by state law).

Instead of asking whether trustee conduct violated state law, it is necessary to determine what the general scope of the trustee's duty was, and whether the conduct alleged to violate state law fits within that scope. One clear indication of the scope of the trustee's authority is whether the trustee's challenged actions bind the estate, since ultra vires acts cannot do so.

In the present case, Schechter's actions with respect to state taxes were plainly within the scope of this authority as defined by the Bankruptcy Code, and the estate is liable for the payment of the taxes. Schechter was authorized to operate the debtors' hotel business under Section 1108 of the Bankruptcy Code, and the unpaid state taxes, arising as a result of the operation of that business, became administrative expenses under Section 503(b)(1)(B) of the Code, entitled to a first priority in payment under Section 507(a)(1). Had the case proceeded in Chapter 11, Schechter, as trustee, would have had to propose a plan that paid these taxes in full, 11 U.S.C. §§ 1106(a)(5) (duty of trustee to file a plan), 1129(a)(9)(A) (requirement for full payment of administrative priority claims under plan). Upon conversion of the cases to Chapter 7, the tax claims became entitled to priority distribution from the estates' assets (though now subordinated to administrative expenses generated in the Chapter 7 case). 11 U.S.C. §§ 726(a) (distribution of estate property), 726(b) (subordination of adminis-

---

**15.** There is, of course, no impropriety in advancing legally inconsistent arguments. *Arthur v. United States*, 45 F.3d 292, 296 (9th Cir.1995) ("Inconsistent legal positions are not foreclosed by the Rules of Civil Procedure."); *Hanna Boys Center v. Miller*, 853 F.2d 682, 687 n. 3 (9th Cir.1988) ("Of course, [a party] is entitled to take inconsistent legal positions.").

trative expenses generated prior to conversion). The Department of Revenue has itself recognized that its tax claims are chargeable against the Chapter 7 estates, and is pursuing their collection from the estates.

Thus, whether or not Schechter violated any fiduciary duty by not paying the taxes when they became due, an issue considered below, the nonpayment of taxes was well within his authority as a trustee operating the business of the estates.

### 2. This court has jurisdiction to determine that Schechter's acts were within the scope of his authority.

Although the general rule is that the bankruptcy court lacks jurisdiction to consider an ultra vires action against a bankruptcy trustee, there is jurisdiction here. As noted above, bankruptcy courts may assert jurisdiction where an ultra vires claim "affects the bankrupt estate or its administration ... or where the equities of the case may demand injunctive relief." *Leonard v. Vrooman,* 383 F.2d 556, 560 (9th Cir.1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968). Here, because the Department is pursuing a claim against the estate for the same taxes it seeks to recover against Schechter personally, the ultra vires claim directly affects the estate: if Schechter were required to pay the taxes, the claim against the estate would be satisfied. This impact on the claims process is sufficient to establish "arising in" jurisdiction under Section 1334(b). *Cf. Bumb v. Bonafide Mills, Inc.,* 327 F.2d 544 (9th Cir. 1964) (finding bankruptcy court jurisdiction in a similar situation under the 1898 Bankruptcy Act). More generally, a trustee required to defend a legally groundless ultra vires action in state court may have an administrative claim against the estate for the expense incurred in the process, again implicating the "arising in" jurisdiction. Finally, to the extent that the equities of the case are relevant, this court, due to its familiarity with the operation of the Bankruptcy Code, may well be in the best position to make an accurate and expeditious determination of the scope of the trustee's authority. *Cf. In re Sundance Corp.,* 149 B.R. 641, 649 (Bankr. E.D.Wash.1993) (asking, in a different context, "Who better can determine if a receiver acted beyond the scope of its authority than the court that granted that authority?")

### 3. Schechter had no bankruptcy-related fiduciary duty to pay the taxes at the time they became due.

The other position asserted by the Department of Revenue is that Schechter breached an obligation to the State of Illinois, recognized under bankruptcy law, by not paying state taxes in full at the time they became due. If there were such a duty, then Schechter might be surcharged for violating it, pursuant to *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). However, although the Department cites alternative sources for such a duty, none withstand scrutiny. Indeed, it appears that Schechter may have had a duty not to pay the taxes when they were due.

*a. Trust law.* When the hotel business that Schechter operated collected the taxes in question here from its customers, the estates took in cash and incurred a tax liability to the state. In a prior adversary proceeding, this court held that the cash belonged to the estate, unencumbered by a trust in favor of the State of Illinois, and that the receipt of the funds simply created a debtor-creditor relationship. *State of Illinois v. Steege (In re Markos Gurnee Partnership),* 163 B.R. 124 (Bankr.N.D.Ill.1993) (the "trust decision"). During briefing in the present adversary proceeding, the Department asked this court to reconsider the trust decision, asserting that even if an express trust was not created under state law (the theory then advanced by the Department), a constructive trust should be imposed on a theory of unjust enrichment. The request for reconsideration must be denied. The prior adversary proceeding was a simple two-party dispute, raising a discrete question of whether the State of Illinois had a trust interest in certain funds. Outside of bankruptcy, an order disposing of such a case would be final and appealable, and therefore, even in the context of an ongoing bankruptcy case, this court's trust decision was final and appealable. *In re Morse Electric Co.,* 805 F.2d 262, 264–65 (7th Cir.1986). The only mechanism for col-

laterally attacking that decision, now that the time for appeal has run, is by a motion under Fed.R.Bankr.P. 9024, incorporating Rule 60, Fed.R.Civ.P., *In re Met–L–Wood,* 861 F.2d 1012, 1016 (7th Cir.1988), and Rule 60 may not be used to advance a legal argument that could have been presented at the time of the original hearing, *In re Frontier Airlines, Inc.,* 137 B.R. 811 (D.Colo.1992); *cf. Hope v. U.S.,* 43 F.3d 1140, 1144 (7th Cir.1994) (rejecting a Rule 60 motion based on a new legal argument because petitioner "could have raised this issue earlier."). Thus, at least for purposes of this case, it is established that the tax funds collected from hotel customers were not property held in trust for the State of Illinois, and so Schechter breached no duty by failing to preserve these funds for the State.

*b. Federal non-bankruptcy law.* The Department cites two federal statutes as imposing on bankruptcy trustees a personal duty to comply with state tax laws. Each of the statutes does impose duties on those managing property under the authority of a federal court. But the question as to each is whether the duty is imposed on the managers in their personal capacities (as the Department argues) or only in their official capacities.[16] If the liability is only official, the estate would have an obligation to pay the taxes, but the trustee individually would not.[17]

The first statute, 28 U.S.C. § 959(b) provides, in pertinent part, as follows:

[A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

This provision was part of the same Act of March 3, 1887, ch. 373, 24 Stat. 552, that allowed parties injured by the operation of a receivership to sue the receivership in a local court, by way of the provision now codified at 28 U.S.C. § 959(a). See pp. 221–222, *supra.* But just as Section 959(a) has been held to subject trustees to suit only in their official capacities, Section 959(b) should be read as imposing substantive civil liability on trustees only in their official capacities.

There is no legislative history to illuminate the intent of Congress in enacting the language of Section 959(b).[18] However, the relevant judicial decisions are both helpful and unambiguous. Perhaps most significantly, the Supreme Court's *McNulta* decision, which emphatically stated the rule that suits against receivers should be considered as official liability actions, was decided in 1891, four years after the enactment of what is now Section 959(b). *McNulta v. Lochridge,* 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796 (1891), see p. 6, *supra.*

■ Moreover, in the few reported decisions that have expressly considered the language of Section 959(b), it has been interpreted as creating only official liability. Thus, the statutory language was cited by the Texas Supreme Court in support of the proposition that a railroad receivership (but not the receiver personally) was liable for failing to clear weeds from the railroad right of way. *International & G.N. Ry. v. Dawson,* 111 Tex. 247, 252, 232 S.W. 279, 280–81 (1921). And most recently, in *State v. Better Brite Plating, Inc.,* 168 Wis.2d 363, 382, 483

16. As discussed above (at pp. 214–216), an estate under court administration is not a legal person, and thus a statute cannot directly impose liability on such an estate. Therefore, a statute imposing a duty upon those administering estates may simply intend to impose "official liability," binding only estate assets, rather than the individuals administering the estates.

17. However, a trustee always has a fiduciary duty to administer estate assets prudently, and thus, if a trustee fails to pay state taxes in a timely fashion, even though the funds to pay the taxes are available, the trustee may be personally liable to the estate for any resulting penalties and interest. *In re San Juan Hotel Corp.,* 847 F.2d 931, 946 (1st Cir.1988); *Ingels v. Boteler,* 100 F.2d 915, 920 (9th Cir.1938).

18. The committee report and the floor debates on the bill that became the Act of March 3, 1887 address only provisions other than the one requiring compliance with applicable state law. *See* H.R.Rep. No. 1078, 49th Cong., 1st Sess. (1886).

N.W.2d 574, 582 (1992), the Wisconsin Supreme Court interpreted Section 959(b) as follows:

> [T]he only logical reading of section 959(b) is that it provides the basis for suits against trustees brought under section 959(a). Thus, where a trustee violates state law while performing acts that constitute "carrying on business" connected with the property in trust, such trustee may be sued in his or her official capacity in state court without leave of the appointing court. And, where the trustee violates state law performing acts that do not constitute "carrying on business" connected with the property in trust, such trustee may be sued in his or her official capacity in state court only if leave of the appointing court is granted.

The court made clear its understanding that "[o]ne could not bring a breach of fiduciary duty suit against a trustee personally in state court under section 959 because section 959 applies only where official liability is sought." 168 Wis.2d at 383 n. 13, 483 N.W.2d at 582 n. 13. Thus, although Section 959(b) clearly serves to render a bankruptcy estate liable to comply with applicable state law, it does not impose personal liability on the bankruptcy trustee.

The other statute cited by the Department of Revenue as imposing a personal duty on bankruptcy trustees to pay state taxes when due is 28 U.S.C. § 960. This statute provides simply: "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State, and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." As to this statute, the legislative history is quite helpful. As the United States Supreme Court explained in *California State Board of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 852, 109 S.Ct. 2228, 2234, 104 L.Ed.2d 910 (1989):

> Section 960 ... was passed in 1934 ... in response to a Federal District Court decision holding that a bankruptcy receiver operating a gasoline and oil distributing business was not liable as a matter of state law for a state sales tax on motor fuel.

See H.R.Rep. No. 1138, 73d Cong., 2d Sess. (1934); S.Rep. No. 1372, 73d Cong., 2d Sess. (1934). Read most naturally, the statute evinces an intention that a State be permitted to tax a bankruptcy estate....

Indeed, the committee reports cited by the court state that the purpose of the legislation is to "subject businesses conducted under receivership in Federal court to State and local taxation," or, as the Supreme Court stated, "to tax a bankruptcy estate." Nothing in the reports indicates any intent to impose personal liability on receivers or trustees for state taxes incurred by the businesses they operate, and there appear to be no judicial decisions so holding. H.R.Rep. No. 1138, 73d Cong., 2d Sess. (1934); S.Rep. No. 1372, 73d Cong., 2d Sess. (1934). Section 960, then, like Section 959(b) provides for official, not personal liability.

Finally, it should be noted that the interpretation of Sections 959(b) and 960 suggested by the Department of Revenue could lead to disastrous consequences. Both tax liabilities and liabilities under general state regulations may overwhelm a bankruptcy estate. Even if these liabilities were given a priority over all other claims (and, as noted below, they are not), there are often insufficient funds in an estate to pay them. Under the Department's interpretation of Sections 959(b) and 960 it would become the personal responsibility of the bankruptcy trustee to satisfy whatever tax or regulatory liability the estate was unable to pay. The Wisconsin Supreme Court has recognized, in a slightly different context, the "potential devastating impact" that such a result would have on "the pool of persons willing to serve as trustees." *State v. Better Brite Plating, Inc.,* 168 Wis.2d 363, 386, 483 N.W.2d 574, 583 (1992), quoting *State v. Better Brite Plating, Inc.,* 160 Wis.2d 809, 823, 466 N.W.2d 239, 247 (Wis.Ct.App. 1991).

*c. Bankruptcy law.* The final consideration involved in assessing whether Schechter had a personal duty to pay the state taxes is the Bankruptcy Code itself. Under Section 503(b)(1)(B) of the Code, as noted earlier, taxes incurred by the estate are an administrative expense. However, many other liabilities of an estate in bankruptcy are also

administrative expenses, including the wages of employees (11 U.S.C. § 503(b)(1)(A)) and the compensation and reimbursement of the professionals employed by the debtor (11 U.S.C. § 503(b)(2)). Under Section 507(a)(1) of the Code, all administrative expenses allowed under Section 503(b) are accorded the same priority. *In re Colortex Industries, Inc.,* 19 F.3d 1371, 1382–83 (11th Cir.1994). Thus, in a situation where there may not be sufficient assets in an estate to pay all administrative claimants, a trustee could not pay tax claims ahead of other administrative claims without violating the Code's system of priorities.[19]

Indeed, preferential payment of tax claims may render trustees liable to the estate for breach of their duties under the Code. *In re Lambertville Rubber Co.,* 111 F.2d 45 (3rd Cir.1940), a case decided under parallel provisions of the Bankruptcy Act, makes this point emphatically. There, a trustee paid certain state unemployment taxes that became due during his administration, even though there were other administrative claims outstanding. The court held that a surcharge was necessary because "such taxes rank upon a parity, but only upon a parity with the other expenses of administration." *Id.* at 50. In the present case, it appeared that the Markos Gurnee estate would not have sufficient assets to pay all administrative claims. Therefore, under the Code, Schechter had a duty not to pay the taxes in full, but to allow the Chapter 7 trustee to make a proper distribution to all administrative claimants.[20]

### Conclusion

For the reasons stated above, Joel Schechter, as Chapter 11 trustee, was acting within the scope of his authority in not paying the taxes claimed by the Illinois Department of Revenue, and he breached no fiduciary duty by failing to pay the taxes. This court has jurisdiction to make these determinations. Accordingly, Schechter is entitled to a declaratory judgment that he is not personally liable for the taxes claimed. The appropriate, and only mechanism for payment of the taxes is through a claim against the bankruptcy estate. An appropriate judgment order will be entered.

### AMENDED JUDGMENT ORDER

For the reasons set forth in the accompanying Amended Memorandum of Decision the court finds that it has jurisdiction over the issues raised in the pending adversary proceeding, and that the plaintiff is entitled to the declaratory judgment that he seeks. The court therefore enters judgment on the plaintiff's complaint, declaring that Joel Schechter is not personally liable to the State of Illinois, Department of Revenue for taxes accruing as a result of his operation of the business of the debtors. Furthermore, the court enters judgment against the State of Illinois Department of Revenue on its counterclaim. The cross complaint of the State of Illinois Department of Revenue with respect to the plaintiff's insurance is moot for the reasons stated above. This order is intended as a final order, disposing of all issues in this adversary proceeding.

---

**19.** However, as discussed in this court's opinion in *In re Telesphere Communications, Inc.,* 148 B.R. 525, 530 (Bankr.N.D.Ill.1992), a trustee may make payments to administrative creditors, including taxing authorities, in the ordinary course of business, pursuant to Section 363(c)(1) of the Bankruptcy Code, without violating the priority rules.

**20.** Another section of the Bankruptcy Code, Section 505, was also the subject of briefing by the parties. This section deals with the authority of the court presiding over a bankruptcy case to make determinations of tax liability. Section 505(b) provides for a "discharge" of "the trustee, the debtor, and any successor to the debtor" from tax liabilities incurred during the adminis-

tration of the estate, upon the filing of a tax return, payment of the tax shown as due, and a request for determination of tax liability with the appropriate governmental office. The Department of Revenue argued that this procedure is the only way in which Schechter's personal liability for the disputed taxes could be determined. However, nothing in Section 505(b) purports to establish an exclusive remedy, and by its terms it deals only with tax liability "of the estate." The "liability" of a trustee in this connection is simply the trustee's fiduciary duty to pay allowed claims from estate assets. The personal liability of the trustee for the taxes themselves is not addressed by Section 505.